UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUINTIN WILKERSON,
                        Plaintiff,

-v-

BLINK HOLDINGS, INC.,
                        Defendant.

23-CV-9178 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Quintin Wilkerson brings claims under 42 U.S.C. § 1981, the New York State Human Rights Law, New York State Executive Law, §§ 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et. seq.* ("NYCHRL") against Defendant Blink Holdings, Inc. ("Blink").  Presently before the Court is Blink's motion to dismiss Wilkerson's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the motion to dismiss is denied.

**I.    Background**

    **A.    Factual Background**

The following facts are taken from the complaint and are assumed to be true for purposes of resolving Defendants' motion.  (ECF No. 1 ("Compl.").)  Wilkerson "is a biracial, white and African, American-born male" who has an "English accent because he was raised in the United Kingdom."  (*Id.* ¶¶ 9, 10.)  At all relevant times, Wilkerson was an employee of Defendant Blink, a fitness gym chain.  (*Id.* ¶¶ 13-14.)  Wilkerson began working at Blink on July 8, 2022.  (*Id.* ¶ 21.)  Wilkerson alleges that "[s]hortly after the beginning of his employment, [his] supervisors and coworkers began to discriminate against [him] on the basis of his mixed-race,

1

African-American and [White] racial background and color." (*Id.* ¶ 22.) Wilkerson alleges several instances of racial discrimination.

On or about July 11, 2022, Wilkerson alleges, his supervisor, Club Manager Andre Fields, who is African-American, asked Wilkerson, "What are you mixed with?" (*Id.* ¶ 23.) After Wilkerson explained that his mother is "German (white)" and his father is "African-American," Fields used a "stereotypical Southern accent" and replied by saying, "So your daddy's from the South," and "I don't know if I can trust your momma because she's white." (*Id.*) After Wilkerson tried to change the subject, Fields also stated, "I could tell you're mixed with something. I can see your mom's nose, but you have your daddy's lips." (*Id.*) Although Wilkerson "was offended by his supervisor's stereotypes," he did not immediately complain because he did not want to "cause a stir" and he "believed that the discrimination would be temporary." (*Id.*)

As another example, Fields told Wilkerson "not to trust Front Desk Associate, Kyle Espitia, because he's 'white.'" (*Id.* ¶ 24.) In another instance, Wilkerson alleges that Personal Trainers' Manager Ellen Thompson asked him, "Do you have any siblings?" (*Id.* ¶ 25.) Wilkerson responded that he has an older sister who lives in San Diego, California. (*Id.*) Thompson replied saying, "I'm the youngest of eight, but not like you and your sister. We all have the same dad." (*Id.*) Wilkerson was offended by Thompson's stereotypical assumption that he and his sibling had different fathers because of his race. (*Id.*)

The following week, Wilkerson and his coworkers each received ten dollars to buy lunch while their colleagues were attending a company picnic and barbecue on Randall's Island. (*Id.* ¶ 26.) Wilkerson ordered several pizzas for the employees and brought them into the break

room.  (*Id.*)  Wilkerson alleges that Fields said, "This pizza is better than the white people's food that would've been given at the picnic anyway."  (*Id.* ¶ 27.)

On or about July 25, 2022, Wilkerson attended a meeting with Area General Manager Derek Fox and Regional Area Manager Jordan Blake during which they informed Wilkerson that Fields had been terminated.  (*Id.* ¶ 29.)  In addition, during this meeting, Wilkerson complained to Fox and Blake about Thompson's racist remarks, and Fox told Wilkerson that he would "take care of it."  (*Id.*)  On that same day, Blink "replaced Mr. Fields with another African-American employee, RJ Frazer."  (*Id.* ¶ 30.)  Later that week, Wilkerson met with Frazer and complained to Frazer about Fields's racist comments.  (*Id.* ¶ 31.)  Wilkerson alleges that "Frazer swept Wilkerson's complaint under the rug, stating, "You need to get over that.  He's not here anymore."  (*Id.*)

In another instance of discriminatory conduct, on or about July 26, 2022, during a conversation with Frazer, Wilkerson stated "that his Caucasian ex-partner was a member of the gym" and Frazer, "referring to [Wilkerson's] ex-partner's race," responded by stating, "Ew, I would never."  (*Id.* ¶ 32.)  Later on that same day, Frazer told Wilkerson to assist with a task, and Wilkerson stated that he was in the middle of another task.  (*Id.* ¶ 33.)  Frazer then said to Wilkerson, "You have 'Caucacity' (Caucasian audacity) and white privilege."  (*Id.*)

On or about August 5, 2022, when a gym member became verbally aggressive toward Wilkerson on the phone, Wilkerson "was forced to hand over the call" to Frazer.  (*Id.* ¶ 34.)  During the call, and in Wilkerson's presence, Frazer told the member that he would "deal with" Wilkerson separately.  (*Id.*)  "Based on Mr. Frazer's remark, and fearing retaliation," Wilkerson "gathered his things and left the shift before it ended" and "stated that he would be back for his next scheduled shift, the following Saturday morning."  (*Id.* ¶ 35.)

3

"That same day, at 4:36 PM, in retaliation for [Wilkerson's] complaints, and to create a pretextual paper trail against him, Mr. Frazer emailed [Wilkerson] and falsely accused him of giving his [two] weeks' notice and resigning." (*Id.* ¶ 36.) On or about August 6, 2022, Wilkerson returned to work and emailed Fox requesting to schedule a meeting to discuss Wilkerson's workplace concerns. (*Id.* ¶ 37.) Wilkerson did not receive a response from Fox. (*Id.*) Then, "[o]n or about Monday, August 8, 2022, fearing a negative employment reference, and knowing that his email would be shared with the staff, [Wilkerson] emailed [Fox] and informed [Fox] that he was leaving Blink Fitness." (*Id.* ¶ 38.) Wilkerson also sent an email to the Human Resources Department and "complained about experiencing race discrimination and retaliation." (*Id.* ¶ 39.) In an email referring to Fields and Thompson, Wilkerson wrote:

> "There does not seem to be any repercussion for making racist comments toward me because of the color of my skin. It seems like [Blink Fitness] is sweeping my concerns under the rug and turning it around on me with a termination. I am disappointed to see this turn of events, and I hope that other people of color do not experience the same harassment that I have, in such a short amount of time."

(*Id.*)

### B. Procedural History

Wilkerson commenced this action on October 18, 2023. (ECF No. 1.) Defendants filed a motion to dismiss on January 10, 2024. (ECF No. 11.) Wilkerson filed an opposition to Defendants' motion to dismiss on February 7, 2024. (ECF No. 16.) Defendants filed a reply in further support of their motion to dismiss on February 21, 2024. (ECF No. 18.)

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.* at 678, the Court must draw "all inferences in the light most favorable to the non-moving party[ ]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). Determining whether a complaint states a plausible claim is ultimately a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In deciding a motion pursuant to Rule 12(b)(6), "the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken." *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 545 (S.D.N.Y. 2011) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)), *aff'd*, 500 F. App'x 42 (2d Cir. 2012) (summary order).

### III. Discussion

#### A. Discrimination Claims

Blink contends that Wilkerson fails to adequately allege a claim for racial discrimination under 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL.

##### 1. Discrimination Claims Under 42 U.S.C. § 1981 and the NYSHRL

Section 1981 provides in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004). NYSHRL § 296(1)(a) provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . race . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

Section 1981 and NYSHRL discrimination claims are analyzed under the same substantive standard applicable to Title VII discrimination claims. *See Simmons v. Akin Gump Strauss Hauer & Feld, LLP*, 508 F. App'x 10, 12 (2d Cir. 2013) (summary order). Section 1981 and NYSHRL claims are thus governed by the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination by demonstrating that "(1) plaintiff is a member of a protected class; (2) plaintiff was qualified for his or her position; (3) plaintiff was subjected to an adverse employment action; and (4) the adverse employment action took place under circumstances giving a rise to an inference of discrimination based on plaintiff's membership in the protected class." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 404 (S.D.N.Y. 2014) (internal citations omitted). "If the plaintiff successfully establishes a *prima facie* case, 'the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action.'" *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) (quoting *United States v.*

*Brennan*, 650 F.3d 65, 93 (2d. Cir. 2011)). "If the employer carries that burden, 'the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Id.* (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

At the motion to dismiss stage, Wilkerson "is not required to plead a *prima facie* case under *McDonnell Douglas*." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Instead, he "must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id.* at 87. A plaintiff "may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* (citing *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015)). At the pleading stage, Wilkerson must only plead facts that "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311.

Blink contends that Wilkerson fails to adequately allege a discrimination claim under 42 U.S.C. § 1981 and the NYSHRL because he fails to adequately allege an adverse employment action. (ECF No. 12 at 6.) The Second Circuit has "define[d] an adverse employment action as a 'materially adverse change' in the terms and conditions of employment." *Sanders v. New York City Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir.1999)). "To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). "Examples of such a change include 'termination of employment, a demotion evidenced by a decrease in

7

wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Id.* (quoting *Terry*, 336 F.3d at 138).

Wilkerson contends that he experienced an adverse employment action when Frazer, Wilkerson's supervisor, falsely accused Wilkerson of putting in his two weeks' notice, effectively terminating Wilkerson's employment. (Compl. ¶ 36; ECF No. 13-1.) Blink contends that Wilkerson cannot assert an adverse employment action because he was not terminated, but rather, he voluntarily resigned. Wilkerson clearly alleges in his complaint that he did not intend to resign. (Compl. ¶ 36.) Wilkerson alleges that following the phone call with the gym member that he was forced to hand over to Frazer, Wilkerson gathered his things and left the shift before it ended, but stated that he would return for the next scheduled shift. (*Id.* ¶ 35.) Wilkerson further alleges that despite his stated intention to return for the next scheduled shift, that same day, Frazer emailed him and falsely accused him of giving his two weeks' notice and resigning. (*Id.* ¶ 36.) The email exhibits filed by Blink reflect the same. On August 5, 2022, the same day as the phone incident, Frazer wrote to Wilkerson, "This afternoon while I took over the call with the difficult member you verbally gave me your [two weeks' notice] and left your shift early." (ECF No. 13-1.) Wilkerson responded to Frazer within fourteen minutes, writing "I did leave early and [am] fully aware of my consequences and accept my write up and have no problem signing such. As of now I decline to submit my two [weeks'] notice, just yet." (*Id.*) On August 8, 2022, Wilkerson wrote an email to all Blink employees stating that he was leaving Blink and that he accepted a job in Sydney, Australia. (ECF No. 13-3.) In addition, on August 8, 2022, Wilkerson wrote to Fox, "You see what my plans are but I do want to make clear that me taking my job in Sydney is not the reason I'm leaving Blink." (ECF No. 13-2.) Finally, on August 8,

2022, Wilkerson also wrote a complaint reiterating that when he left the shift early, he stated that we would be back for the next shift, and that he never gave his verbal two weeks' notice. (ECF No. 13-4.) Wilkerson has adequately pleaded that he suffered an adverse employment action. Whether Wilkerson gave his verbal two weeks' notice when he left the shift early is a question of fact not to be resolved at the motion to dismiss stage.

Blink also contends that Wilkerson fails to plausibly allege an inference of discrimination. (ECF No. 12 at 8.) Wilkerson must allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F. 3d at 87. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms, or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312. "'[T]he evidence necessary to satisfy th[e] initial burden' of establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination is 'minimal.'" *Id.* (*quoting Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 281 (2d Cir. 2001)).

Over the course of his brief employment at Blink, Wilkerson faced multiple instances of derogatory comments relating to his race. Wilkerson faced negative comments from Fields and Frazer about White people, including an instance in which Frazer told Wilkerson that he had "Caucacity." (Compl. ¶¶ 23, 24, 27, 32, 33.) Wilkerson also allegedly faced discriminatory racial stereotyping from Thompson about Black people. (*Id.* ¶ 25.) In addition, when Wilkerson complained to Frazer about the racial discrimination he faced from Fields, Frazer told Wilkerson

9

to "get over" it.  (*Id.* ¶ 31.)  Less than two weeks after his complaint to Frazer about Fields's racial discrimination, Frazer falsely accused Wilkerson of submitting his two weeks' notice and resigning.  (Compl. ¶ 36.)  This sequence of events leading to Wilkerson's discharge is sufficient for Wilkerson to meet his minimal burden of establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination.  Wilkerson has therefore adequately pleaded a *prima facie* case of race discrimination under 42 U.S.C. § 1981 and the NYSHRL.

### 2. NYCHRL Discrimination Claim

The NYCHRL makes it "an unlawful discriminatory practice . . . for an employer or an employee or agent thereof, because of the actual or perceived . . . race, . . . national origin, . . . or immigration or citizenship status of any person . . . to discriminate against such person in compensation or in terms, conditions or privileges of employment."  New York City Administrative Code, § 8-107(1)(a).  "Claims brought under the NYCHRL are analyzed using the same framework as Title VII . . . , but 'must be viewed independently from and more liberally than their federal . . . counterparts.'"  *Deveaux v. Skechers USA, Inc.*, No. 19-CV-9734, 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)).  "The [NYCHRL] does not require that a plaintiff prove an adverse employment action"; rather, "the plaintiff need only show differential treatment—that [he] is treated 'less well'—because of a discriminatory intent."  *Id.* (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-10 (2d Cir. 2013)).  For the reasons already discussed above and *a fortiori*, Wilkerson has adequately pleaded a race discrimination claim under the NYCHRL.

10

### B. Hostile Work Environment Claims under 42 U.S.C. Section 1981, the NYSHRL, and the NYCHRL

Blink contends that Wilkerson fails to adequately allege a claim for hostile work environment under 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL.

#### 1. 42 U.S.C. § 1981 Hostile Work Environment Claim

"Section 1981 has been interpreted to 'provide[] a cause of action for race-based employment discrimination based on a hostile work environment." *Littlejohn*, 795 F.3d at 320 (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir.2000)). To establish a hostile work environment under 42 U.S.C. § 1981, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (quoting *Raspardo*, 770 F.3d at 114). "In determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).

Here, Wilkerson alleges that over the course of his brief employment at Blink, he was subjected to racially discriminatory comments on a near-weekly basis from several different

employees. These comments were sufficiently continuous and concerted such that could potentially be found to be pervasive. And these comments were made by Wilkerson's supervisors, which a reasonable person could find hostile or abusive. In particular, Frazer also told Wilkerson that he needed to "get over" the racially discriminatory comments he received from Fields, which, paired with Frazer's own racially discriminatory comments, would further lead a reasonable person to find it hostile or abusive. Finally, Wilkerson also alleges that he subjectively perceived the work environment to be abusive, as reflected in his emails to Fox and the human resources department following his termination. (Compl. ¶ 36; ECF No. 13-2; ECF No. 13-4.) Wilkerson thus adequately alleges a hostile work environment claim under 42 U.S.C. § 1981.

### 2. NYSHRL and NYCHRL Hostile Work Environment Claims

Under the NYSHRL, it is unlawful:

> For an employer . . . to subject any individual to harassment because of an individual's . . . race . . . regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories. . . . Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared. It shall be an affirmative defense to liability under this subdivision that the harassing conduct does not rise above the level of what a reasonable victim of discrimination with the same protected characteristic or characteristics would consider petty slights or trivial inconveniences.

N.Y. Exec. Law § 296(1)(h). Thus, under the NYSHRL, Wilkerson need not allege that the "harassing or discriminatory conduct [was] severe or pervasive for it to be actionable." *Wray v. Westchester Med. Ctr. Advanced Physician Servs., P.C.*, No. 21-CV-00394, 2022 WL 3214924, at *10 (S.D.N.Y. Aug. 9, 2022). Instead, Wilkerson need only alleged that the conduct "results

in inferior terms, conditions, or privileges of employment." *Id.* This "more lenient standard is similar to the standard for stating a hostile work environment claim under the NYCHRL." *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-CV-02512, 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022).

As Wilkerson has adequately alleged a hostile work environment claim under 42 U.S.C. § 1981, the Court also concludes that he has adequately pleaded a hostile work environment claim under the NYSHRL and the NYCHRL's "more liberal standard." *Wray*, 2022 WL 3214924, at *11 n.12; *see also Mondelo*, 2022 WL 524551, at *10.

### C.     Retaliation Claims under 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL

Blink contends that Wilkerson has failed to adequately allege a claim for retaliation under 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL.

#### 1.     42 U.S.C. § 1981 and NYSHRL Retaliation Claims

The Supreme Court has held that 42 U.S.C. § 1981 encompasses retaliation claims. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008). The NYSHRL also makes it unlawful to "retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296(7).

Section 1981 and NYSHRL retaliation claims "are governed by the same standards as retaliation claims brought under Title VII and are therefore analyzed using the *McDonnell Douglas* three-part burden-shifting framework." *Mondelo*, 2022 WL 524551, at *10, *12 (citing *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013)). "To state a prima facie case, Plaintiff must allege (1) that he participated in a protected activity, (2) that his participation was known to his employer, (3) that his employer thereafter subjected him to a materially adverse employment action, and (4) that there was a causal connection between the protected

activity and the adverse employment action." *Id.* (citing *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)). "The plaintiff's burden of proof at the prima facie stage is de minimis." *Id.* (citing *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)). "If and when the initial burden is met by the plaintiff, a 'presumption of retaliation' arises, which the defendant may rebut by 'articulating a legitimate, non-retaliatory reason for the adverse employment action.'" *Id.* (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). "If the defendant provides such a reason, 'the presumption of retaliation dissipates,' and the burden shifts back to the plaintiff to prove 'that the desire to retaliate was the but-for cause of the challenged employment action.'" *Id.* (quoting *Jute*, 420 F.3d at 173).

Blink first contends that Wilkerson has failed to allege an adverse employment action. For the reasons discussed above, the Court concludes that Wilkerson has adequately alleged that he was terminated and thus suffered an adverse employment action. Blink also contends that Wilkerson has failed to allege a causal connection between the protected activity and the adverse employment action. "A causal link is alleged either by pleading facts to support the inference that the defendant was motivated by retaliatory animus, or by pleading a close temporal proximity between the protected activity and the retaliatory action." *Mondelo*, 2022 WL 524551, at *11 (citing *Summer v. U.S. Postal Service*, 899 F.2d 203, 209 (2d Cir. 2009). Here, Wilkerson alleges that he was terminated less than two weeks after he complained to Frazer about the previous racial discrimination he experienced from Fields. (Compl. ¶¶ 31, 36.) At the motion to dismiss stage, the close temporal proximity between Wilkerson's complaint and his termination is sufficient to plead a causal connection between the protected activity and the adverse employment action.

>   **2.   NYCHRL Retaliation Claims**

The NYCHRL prohibits employers from "retaliat[ing] or discriminat[ing] in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7).  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (internal citation omitted); *see also* N.Y.C. Admin. Code § 8-107(7).  "The 'adverse employment action' pleading standard is more lenient under the NYCHRL than under Section 1981 and the NYSHRL." *Mondelo*, 2022 WL 524551, at *12 (citation omitted).  Because Wilkerson's Section 1981 and NYSHRL retaliation claims survive, so too does his NYCHRL retaliation claim.  *See id.*

### IV.   Conclusion

For the foregoing reasons, Blink's motion to dismiss is DENIED.

Defendant Blink shall file an answer to the complaint within 21 days of the date of this opinion and order.

>   SO ORDERED.

Dated:  June 10, 2024
        New York, New York

_____
J. PAUL OETKEN
United States District Judge